# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| TUBA CITY REGIONAL HEALTH CARE CORPORATION, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 13-639 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 18, 24 |
| | : | | |
| UNITED STATES OF AMERICA *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

### DENYING DEFENDANTS' MOTION TO DISMISS; AND
### FINDING AS MOOT PLAINTIFF'S MOTION FOR REFERRAL TO MAGISTRATE

## I. INTRODUCTION

Plaintiff brought this action pursuant to the Contract Disputes Act of 1978, 41 U.S.C. §§ 7101–09 ("CDA"). The Government moved to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), arguing that there was neither an actual nor a deemed final decision by the contracting officer when the complaint was filed. For the reasons that follow, the Court will deny the Government's motion.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The claims in this case arise from a long-standing dispute between the Indian Health Service ("IHS") and the tribal healthcare providers who contract and compact with that agency to carry out its responsibility to provide health services to American Indians and Alaska Natives. These providers enter into contracts with the IHS pursuant to the Indian Self-Determination and Education Assistance Act, 25 U.S.C. §§ 450–58 ("ISDEAA"). The tribal healthcare providers can receive two types of funding in these contracts. The first is the "secretarial amount," which

is the amount that the IHS would have otherwise provided for the operation of the programs if they were run by the government. *See id.* § 450j-1(a)(1). The IHS also covers "contract support costs," which compensate for administrative and compliance costs. *See id.* § 450j-1(a)(2).

For many years, the IHS underpaid Tuba City Regional Health Care Corporation ("TCRHCC") and other tribal contractors for their contract support costs. *See Cherokee Nation of Okla. v. Leavitt*, 543 U.S. 631, 636 (2005). The Supreme Court held that the government's promises to pay these costs were legally binding. *See id.* at 634. More recently, the Supreme Court held that legislative spending caps on aggregate contract support costs limited the aggregate amount the IHS could pay, but any contractor not paid in full could nonetheless recover damages from the Judgment Fund, 31 U.S.C. § 1304, in contract claims. *See Salazar v. Ramah Navajo Chapter*, 132 S. Ct. 2182, 2193–94 (2012).

On September 17, 2012, TCRHCC sent a letter to IHS contracting officer Frank Dayish detailing underpayments and damages for fiscal year 2006 and explaining the theories on which those damages were premised. *See* Defs.' Mot. Dismiss Ex. 1, ECF No. 18-2. On November 5, 2012, TCRHCC sent five more letters to Dayish, detailing its claims for underpayment and damages for fiscal years 2007–2011. *See id.* Each letter contained a signed certification as required by the CDA. *See id.* The total dollar amount of the claims in each letter exceeded $100,000. *See id.* Each letter contained a spreadsheet explaining TCRHCC's claims. *See id.*

Dayish responded to TCRHCC's September 17, 2012, letter on November 16, 2012. This letter stated, "I anticipate that I will issue a final contracting officer's decision by March 16, 2013." Defs.' Mot. Dismiss Ex. 2, ECF No. 18-3. On January 2, 2013, Dayish responded to TCRHCC's November 5, 2012, letters with five letters requesting certain additional information from TCRHCC in support of its claims, including the contract support costs *actually* incurred by

TCRHCC during the relevant time period. Dayish's letters stated, "If you submit sufficient information to issue a final decision on your claims as requested above, the IHS anticipates that it will issue a final decision on the claims by May 3, 2013." Defs.' Mot. Dismiss Exs. 3–7, ECF Nos. 18-4 to 18-8. On January 25, 2013, TCRHCC responded to Dayish's request, taking the position that the requested information and documents were not relevant. Under TCRHCC's interpretation of the ISDEAA, "[t]he[] sums are not payable based on receipts and vouchers for 'actual' expenditures; rather, they are due in advance so that TCRHCC has the funds to provide the contracted services." Pl.'s Opp'n Ex. D, ECF No. 19-5.

On February 11, 2013, Dayish sent a letter to TCRHCC that purported to grant himself a second extension of the deadline for issuing a final decision on the fiscal year 2006 claim. *See* Defs.' Mot. Dismiss Ex. 8, ECF No. 18-9. The letter stated: "The IHS anticipates that it will issue a final contracting officer's decision by May 3, 2013." *Id.* This letter was sent to TCRHCC more than 140 days after the claim was filed.

On April 26, 2013, Dayish sent another letter to TCRHCC. *See* Defs.' Mot. Dismiss Ex. 9, ECF No. 18-10. In this letter, Dayish purported to grant himself a third extension for the fiscal year 2006 claims, and a second extension for the fiscal year 2007–2011 claims. *See id.* at 1. The letter again requested the information and documents that TCRHCC had previously declined to submit. *See id.* at 2. The letter also stated that Dayish again "anticipated" that the IHS would make a decision by October 22, 2013. *Id.*

Before a decision was rendered, TCRHCC filed this action on May 3, 2013, seeking monetary damages under the CDA. *See* Compl., ECF No. 1. The Government has moved to

dismiss the case for lack of jurisdiction, arguing that TCRHCC failed to exhaust its

administrative remedies.[1]  *See generally* Defs.' Mot. Dismiss, ECF No. 18.

### III.  ANALYSIS

#### A.  Legal Standard

Federal courts are courts of limited jurisdiction, and the law presumes that "a cause lies

outside this limited jurisdiction . . . ."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375,

377 (1994); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court

of limited jurisdiction, we begin, and end, with an examination of our jurisdiction.").  It is a

plaintiff's burden to establish by a preponderance of the evidence that the court has subject

matter jurisdiction.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

Because subject matter jurisdiction focuses on a court's power to hear a claim, the court

must give the plaintiff's factual allegations closer scrutiny than would be required for a Rule

12(b)(6) motion for failure to state a claim.  *See Macharia v. United States*, 334 F.3d 61, 64, 69

(D.C. Cir. 2003); *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13

(D.D.C. 2001).  Thus, a court's analysis of subject matter jurisdiction is not confined to the

allegations contained in the complaint.  *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir.

1986), *vacated on other grounds*, 482 U.S. 64 (1987).  Instead, "where necessary, the court may

consider the complaint supplemented by undisputed facts evidenced in the record, or the

complaint supplemented by undisputed facts plus the court's resolution of disputed facts."

---

[1] TCRHCC has filed a motion asking the Court to refer the Government's motion to a magistrate judge, either to mediate the issues raised in the Government's motion or for a report and recommendation.  *See generally* Pl.'s Mot. Ref. Mag., ECF No. 24.  Because the Court resolves the Government's motion to dismiss, TCRHCC's motion is moot.

*Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)).

The CDA governs disputes arising out of ISDEAA contracts. *See* 25 U.S.C. § 450m-1(d). For a court to have subject matter jurisdiction under the CDA, "the contractor must submit a proper claim—a written demand that includes (1) adequate notice of the basis and amount of a claim and (2) a request for a final decision." *M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1328 (Fed. Cir. 2010). Additionally, "[a] contracting officer's actual or deemed final decision is . . . a predicate for . . . jurisdiction under the CDA." *Claude E. Atkins Enters., Inc. v. United States*, 27 Fed. Cl. 142, 143 (1992). Because it is undisputed that there has not been an actual final decision on TCRHCC's claims and that TCRHCC's claims were properly certified, the question is whether there has been a deemed final decision. *See* 41 U.S.C. § 7103(f)(5).

## B. Deemed Denials

The CDA states: "A contracting officer shall, within sixty days of receipt of a submitted certified claim over $100,000—(A) issue a decision; or (B) notify the contractor of the time within which a decision *will* be issued." 41 U.S.C. § 7103(f)(2) (emphasis added). This provision allows a contracting officer, if they wish, to pick their own deadline. Once picked, however, that deadline is firm. "Failure by a contracting officer to issue a decision on a claim within the required time period is deemed to be a decision by the contracting officer denying the claim and authorizes an appeal or action on the claim . . . ." *Id.* § 7103(f)(5).

Dayish stated that he "anticipated" that he would issue a final decision on the fiscal year 2006 claims by March 16, 2013, and that he would issue a final decision on the fiscal year 2007–2012 claims by May 3, 2013. *See* Defs.' Mot. Dismiss Exs. 2–3. Even assuming that these

statements were firm enough to comply with § 7103(f)(2),[2] once the deadlines passed, the claims were constructively denied under the plain language of the CDA, despite Dayish's attempts to further extend the deadlines. *See* 41 U.S.C. § 7103(f)(5). Thus, TCRHCC was authorized to appeal, and this Court has jurisdiction.

The Government argues that its subsequent attempted extensions were reasonable because the claims are complex. Defs.' Reply 7, ECF No. 20. But the CDA provides no exception to the § 7103(f) timing requirements for complex claims. If a claim is complex, the contracting officer can, within 60 days of receipt of the claim, pick a deadline that gives him plenty of time to evaluate the claim. *See* 41 U.S.C. § 7103(f)(3) ("The decision of a contracting officer on submitted claims shall be issued within a reasonable time . . . taking into account such factors as the size and complexity of the claim."). Once that deadline passes, however, the claim is deemed denied, no matter how complex it is. *See id.* § 7103(f)(5). The contractor can ignore any further attempts to extend the deadline;[3] the CDA "permits a contractor to treat the passage

_____

[2] Dayish's statements may not comply with § 7103(f)(2) because Dayish did not commit to issue final decisions by the specified dates. *See Claude E. Atkins*, 27 Fed. Cl. at 145. His statements certainly constitute *predictions* about when decisions will be issued, but they do not seem to constitute *commitments* to issue decisions by the specified dates. *See* American Heritage Dictionary of the English Language (5th ed. 2013) (defining the word "anticipate" as meaning "[t]o see as a probable occurrence; expect"). However, the Court need not reach this issue here. If Dayish's language was too vague, the claims would have been deemed denied as of November 17, 2012, and January 5, 2013, respectively. If the officer's language was clear, the claims would have been deemed denied as of March 16, 2013, and May 3, 2013, respectively. TCRHCC filed suit after all of these possible deadlines had elapsed.

[3] The Government cites *Reflectone, Inc. v. Dalton*, 60 F.3d 1572 (Fed. Cir. 1995) (en banc), for the proposition that a contracting officer can delay issuing a final decision pending the receipt of further information. That very same case warns against the possibility that the contracting officer might "continually, indeed endlessly, seek information and prolong negotiations without issuing an appealable decision . . . thereby probably delaying rather than accelerating any possible settlement." *Id.* at 1582. The Court reads *Reflectone* as reiterating the requirements of § 7013(f): The contracting officer can pick a deadline, but once picked, that deadline is firm. *See id.* at 1582–83.

of the due date specified in the initial sixty days as a deemed decision even if the contracting officer attempts to further extend the due date." *Claude E. Atkins*, 27 Fed. Cl. at 145.

The Government argues that TCRHCC has not provided the documents that "it needs to evaluate the claims being made and engage in settlement discussions." Defs.' Reply 12. This would only be relevant if the Government were contesting certification.[4] The CDA provides no exception to the § 7103(f) timing requirements for claims that the contracting officer later determines to be insufficiently supported by documentation. *See Orbas & Assocs. v. United States*, 26 Cl. Ct. 647, 650 n.3 (1992) ("Although the [contracting officer] may ask for information to supplement a claim, in the absence of some understanding with the plaintiff that it will defer filing a complaint, the [contracting officer] must still comply with [§ 7103(f)(2)].")  If the contracting officer believes the claims are unsupported at the time a final decision is required to be made, the contractor may deny the claims.  Alternatively, the contracting officer may abstain from issuing a decision; when the deadline passes, the claim will be deemed denied.  In either case, the contractor may appeal; the contracting officer does not have the power to let the claim languish in bureaucratic purgatory.

The Government also argues that the purpose of the CDA is "to induce resolution of more contract disputes by negotiation prior to litigation . . . ."  S. Rep. No. 95-1118, at 1 (1978),

---

[4] The Government argues that even if TCRHCC formally complied with the certification requirement of § 7103(b), the statute "reiterates the contractor's obligation to provide accurate and complete supporting data . . . ."  *See* Defs.' Resp. Ct. Order 2, ECF No. 28.  The jurisdictional requirement is not as stringent as the Government suggests—"[a]ll that is required is that the contractor submit . . . a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim." *Contract Cleaning Maintenance Inc. v. United States*, 811 F.2d 586, 592 (Fed Cir. 1987); *accord Tunica–Biloxi Tribe of La. v. United States*, 577 F. Supp. 2d 382, 410 (D.D.C. 2010) ("The requirement that the contractor provide notice of the amount of the claim means only that the amount claimed must be stated in a manner which allows for reasonable determination of the recovery available at the time the claim is presented and/or decided by the contracting officer.").

*reprinted in* 1978 U.S.C.C.A.N. 5235, 5235. But this is not the only purpose of the statute—it is also supposed to "insure fair and equitable treatment to contractors and government agencies." *Id.* Moreover, if the *only* purpose of the statute were to ensure that contract disputes would be resolved outside of court, § 7013(f) would have been omitted entirely; that would have ensured that a contractor could *never* get into court to resolve a contract dispute with the government without the government's acquiescence.

The Government's invocation of statutory purpose is particularly inapt in this case. Both sides agree that the only way settlement can occur is if the litigation proceeds; otherwise, the Government cannot pay judgments out of the Judgment Fund. Pl.'s Opp'n Ex. A at 2, ECF No. 19-2 (containing a letter from the IHS stating that "the Judgment Fund is authorized to pay only under certain conditions, such as a settlement agreement between the parties . . . *after* the Tribe has appealed the decision of the Agency's awarding official . . . to Federal court"). Allowing the litigation to go forward is a prerequisite to any successful mediation.

## IV. CONCLUSION

For the foregoing reasons, the Court will deny the Government's motion to dismiss for lack of subject matter jurisdiction. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: April 25, 2014                                    RUDOLPH CONTRERAS
                                                        United States District Judge